UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
RICHARD J. CALABRESE,

                Plaintiff,

- against -

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.
------------------------------------------------------------ X

**MEMORANDUM**
**DECISION AND ORDER**

19-CV-00135 (AMD)

ANN M. DONNELLY, United States District Judge:

The plaintiff appeals the Commissioner of Social Security's decision that he is not disabled for purposes of receiving Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act. For the reasons that follow, I grant the plaintiff's motion for judgment on the pleadings, deny the Commissioner's cross-motion, and remand the case for further proceedings.

## BACKGROUND

On November 10, 2014, the plaintiff applied for SSI with an onset date of February 4, 2014, alleging disability because of cervical and lumbar spine disorder, tendinitis in his left shoulder, knee joint disorder, asthma, alcohol abuse, and depressed and anxious mood disorder. (Tr. 14-16.)

Most of the plaintiff's medical problems began in February of 2014 when he was hit by a delivery truck, and hospitalized with intense pain and weakness in his neck, back, and knee. (Tr. 385-86, 401-02.) The accident made the pre-existing pains in his neck, jaw, and back much worse. (Tr. 480.) Later testing showed multiple herniated and bulging discs in his cervical and lumbar spine, spinal stenosis, and entrapped and impinged nerves. (Tr. 20, 468-479.) He had

1

knee injuries, including a complex tear of the posterior horn and medial meniscus, moderate joint effusion, and moderate chondromalacia of the patella. (Tr. 20, 475.) A neurologist, Dr. Stiler, diagnosed him with disc disorders of the cervical and lumbar spine, radiculopathy and internal derangement of his left knee; Dr. Stiler prescribed physical therapy and trigger point injections. (Tr. 20, 401-02.) The plaintiff had knee surgery in April of 2014, which slightly eased the pain. (Tr. 480-81.) He went to physical therapy until December of 2014 but did not receive treatment in 2015 because he no longer had insurance. (Tr. 20, 482.)

The plaintiff had another accident in June of 2016, when he fell two stories through a roof skylight. (Tr. 550-55.) He was hospitalized, and although he had no acute injuries, his pain got worse and he had limited range of motion in his lumbar and cervical spine. (Tr. 21-22.) He was prescribed pain management and physical therapy for two and a half months, but his symptoms did not improve. (Tr. 650.) In June of 2017, in part because his symptoms had not improved, he returned to Dr. Stiler, who diagnosed him with disc disease and radiculopathy of the lumbar and cervical spine, derangement of both knees, a sprain in his right foot, and temporomandibular joint disorder. (Tr. 22, 650-653.)[1]

The plaintiff's SSI request was denied on March 2, 2015. Administrative Law Judge ("ALJ") Sommattie Ramrup held a hearing on August 10, 2017, at which a vocational expert and the plaintiff, represented by a lawyer, testified. (Tr. 14.) In a February 12, 2018 decision, the ALJ denied the plaintiff's claim. (Tr. 14-25.) The ALJ concluded that while the plaintiff had severe impairments—disc disorder of the cervical and lumbar spine with radiculopathy, tendinitis of the left shoulder, joint disorder of the knees, asthma, alcohol abuse, and depressed

---

[1] In addition to these "spine and joint disorders," the plaintiff claimed other disabilities related to substance abuse and asthma. Because the plaintiff has not raised them in his motion, I do not discuss them here.

and anxious mood disorder—he was not eligible for SSI because he did not meet the criteria listed in the Social Security regulations. (Tr. 16.) ALJ Ramrup also determined that the plaintiff had the residual functional capacity ("RFC") to perform "simple and routine tasks" (Tr. 22), with certain limitations.[2]

On November 29, 2018, the Appeals Council denied the plaintiff's request for review. (Tr. 1.) The plaintiff appealed on January 8, 2019. (ECF No. 1.) Both parties moved for judgment on the pleadings. (ECF Nos. 9, 14-15.)

### LEGAL STANDARD

A district court reviewing a final decision of the Commissioner "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted).

The court must defer to the Commissioner's factual findings when they are "supported by substantial evidence," but not "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (citations omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to

---

[2] The plaintiff had to avoid crawling, stooping, crouching, and balancing. He also had to avoid exposure to respiratory irritants, and could not climb ladders, ropes, or scaffolds. (Tr. 18-22.)

3

overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Moreover, the district court should remand if "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004).

## DISCUSSION

The plaintiff challenges the weight the ALJ accorded to the opinions of the treating physicians and consultative examiner, and also takes issue with the ALJ's evaluations of Listings 1.04A and 1.04C. I agree that remand is appropriate.

### I. RFC Determination

Neurologist Dr. Igor Stiler first treated the plaintiff in 2014 after the plaintiff was hit by a van. (Tr. 399.) Dr. Stiler treated the plaintiff for pain, tenderness, discomfort, limited strength and limited range of motion in his neck, back, and left knee. (*Id.*) Testing of the plaintiff's upper extremities showed decreased (or absent) nerve conduction, lumbar radiculopathy, depressed reflexes and other spinal abnormalities. (Tr. 399-400, 474-479.) Dr. Stiler prescribed physical therapy and monitored the plaintiff's progress, noting in subsequent visits that the plaintiff had neck pain, "frequent pain" in his leg and lower back, could not sit for long periods of time without pain, and had difficulty standing or walking "as usual." (Tr. 406-07, 421.) Dr. Stiler treated the plaintiff until the end of 2014, when the plaintiff lost his insurance. (Tr. 404-05.)

The plaintiff was injured against in 2017 and went back to Dr. Stiler, who noted the plaintiff's "history of multiple traumas in a work-related incident . . . with injuries sustained to the neck, low back and bilateral knees and right foot," and that three months of treatment from

other providers had made his symptoms worse. (Tr. 652.) Dr. Stiler prescribed physical therapy, ordered additional imaging, and referred the plaintiff to an orthotist and an orthopedist for a back brace and cane. (Tr. 653.) Writing that the plaintiff's "prognosis is guarded," (Tr. 659), Dr. Stiler concluded that the plaintiff had a "temporary total disability" and was "totally disabled from working." (Tr. 659.)[3] In concluding that the plaintiff had the RFC to perform "light work" with certain exceptions, ALJ Ramrup did not discuss Dr. Stiler at all. (Tr. 18.) This was error.

"The 'treating physician' rule requires that the opinion of a claimant's treating physician be accorded 'controlling weight' if it is well supported and not inconsistent with other substantial evidence in the record." *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704, 2015 WL 321832, at *4 (S.D.N.Y. Jan. 23, 2015) (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); *see also Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017) (summary order).[4] If the ALJ decides that the treating physician's opinion does not merit controlling weight, the ALJ must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted); *accord* 20 C.F.R. § 404.1527(c)(2). Key factors that the ALJ "must consider" include:

> (i) The frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

---

[3] "Guarded prognosis refers to a prognosis given by a physician [expressing that] the outcome of a patient's illness is in doubt." *Coleman v. Comm'r of Soc. Sec.*, No. 15-CV-6624, 2017 WL 1155785, at *4 n.5 (E.D.N.Y. Mar. 27, 2017) (quoting Taber's Cyclopedic Medical Dictionary, 914 (21st ed. 2009)).
[4] The treating physician rule applies because the plaintiff filed his claim before March 27, 2017. *See* 20 C.F.R. § 404.1527.

5

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *accord* 20 C.F.R. § 404.1527(d)(2). Failure to provide "good reasons" for the weight assigned to a treating physician constitutes grounds for remand. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Fontanez v. Colvin*, No. 16-CV-01300, 2017 WL 4334127, at *18 (E.D.N.Y. Sept. 28, 2017) (the ALJ's "failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand.") (internal citations omitted).

Not every medical finding or opinion qualifies under the treating physician rule, and not every medical professional is a treating physician. *See* 20 C.F.R. §§ 416.902(a), 416.927(a),(f) (defining acceptable medical source and opinion evidence). Under 20 C.F.R. § 404.1527(a)(2), medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including ... symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and ... physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Medical opinions are different from treatment notes or diagnostic tests, which "merely list the symptoms detailed by the Plaintiff and/or the tests performed by the doctor." *Wider v. Colvin*, 245 F. Supp. 3d 381, 390-91 (E.D.N.Y. 2017); *see also Bailey*, 2017 WL 1102671, at *2 (medical opinions distinct from "treatment notes documenting Plaintiff's medical history, describing the results of examinations and medical tests, and describing treatments and treatment plans"). Instead, medical opinions "must reflect a judgment 'with regard to the nature and severity of plaintiff's limitations beyond a mere diagnosis and description of symptoms.'" *Bailey*, 2017 WL 1102671, at *2 (quoting *Merriman v. Comm'r of Soc. Sec.*, No. 15-CV-2413, 2015 WL 5472934, at *20 (S.D.N.Y. Sept. 17, 2015)).

It is undisputed that Dr. Stiler was the plaintiff's treating physician, and while the ALJ rightly gave "little weight and no special significance . . . to such phrases as 'total disability or temporary total disability,'" (Tr. 23), Dr. Stiler did more than simply make those observations. He treated the plaintiff for nine months in 2014 and for four additional months in 2017 and made specific diagnoses about the plaintiff's condition and prognosis—none of which the ALJ discussed. Remand is appropriate so that the ALJ can clarify the ALJ's findings, assign appropriate weight to Dr. Stiler's opinions, and perhaps seek additional information from Dr. Stiler if necessary.[5]

The only physician that ALJ Ramrup discussed by name was the consultative examiner, Dr. Carol Long, who met with the plaintiff once on February 23, 2015. (Tr. 480-485.) Dr. Long concluded that the plaintiff had "mild limitation in his ability to walk, stand, climb, push, pull, or carry heavy objects," (Tr. 485), but did not mention Dr. Stiler's 2014 diagnosis. The ALJ decided that Dr. Long's opinions merited "great weight" because they were "consistent with her clinical observations and with the contemporaneous clinical record." (Tr. 23.) However, there was no contemporaneous clinical record; the plaintiff did not have insurance and had not taken pain medication or seen any doctors in 2015, around the time Dr. Long examined him. And more important, Dr. Long's conclusion was not consistent with Dr. Stiler's opinion in 2014, or with what Dr. Stiler's concluded when he treated the plaintiff in 2017 after another accident, two

---

[5] The remaining medical professionals the plaintiff identifies—Dr. Leslie Klein, Dr. Jeffrey Chess, and a physician's assistant, Amy Skinner—did not provide a medical opinion. They either diagnosed the plaintiff or "merely list[ed] the symptoms detailed by the Plaintiff and/or the tests performed by the doctor." *Wider*, 245 F. Supp. 3d at 390-91 (E.D.N.Y. 2017). Moreover, since Dr. Klein is a chiropractor and Ms. Skinner is a physician's assistant, neither is a treating physician for the purposes of that rule even if either had given an opinion. *See Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995) (chiropractor's opinion was not a medical opinion entitled to controlling weight); *see also King v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 277, 281-82 (W.D.N.Y. 2018) (collecting cases). Because none of these medical professionals expressed a medical opinion and two of them were not even "treating physicians," ALJ Ramrup did not have to give their statements controlling weight.

years after Dr. Long saw the plaintiff. "[A]lthough a consultative examiner's opinion may constitute substantial evidence to support an ALJ's RFC determination, the opinion must nonetheless be supported by substantial evidence in the record and the ALJ's determination should contain an assessment of such evidence." *Bowers v. Comm'r of Soc. Sec.*, No. 16-CV-1392, 2018 WL 582582, at *7 (N.D.N.Y. Jan. 26, 2018); *Artinian v. Berryhill*, No. 16-CV-4404, 2018 WL 401186, at *10 (E.D.N.Y. Jan. 12, 2018) ("An ALJ is permitted to accord greater weight to a consultative examiner's opinion if the conclusions are more consistent with the medical evidence."); *see also Floyd v. Colvin*, No. 13-CV-4963, 2015 WL 2091871, at *8 (E.D.N.Y. May 5, 2015) (holding that ALJ did not adequately explain why he found the "opinion of . . . a non-treating physician who examined Plaintiff only once . . . to be so convincing and deserving of significant weight.").[6]

On remand, ALJ Ramrup should reconsider Dr. Stiler's opinions from 2014 and 2017, determine what weight they deserve, and explain the reasons for the ALJ's conclusions. ALJ Ramrup should also reconsider Dr. Long's opinion in light of Dr. Stiler's opinions and reevaluate the plaintiff's RFC. It may very well be that ALJ Ramrup will decide that Dr. Stiler's opinion does not merit controlling weight, but the ALJ must give reasons for the decision. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (holding that contradictory evidence must be "overwhelmingly compelling in order to overcome a medical opinion") (citations and quotations omitted).

---

[6] At the hearing, the plaintiff testified that he was self-medicating using lidocaine patches, which his mother occasionally purchased for him and which the plaintiff "[went] through like water" to manage his pain. (Tr. 54.)

8

## II. The ALJ's Listings Analysis[7]

The plaintiff challenges the ALJ's decision that the plaintiff's severe impairments did not meet or equal a listing under 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ found that the plaintiff had several severe impairments, including disc disorder of the cervical and lumbar spine with radiculopathy, tendinitis of the left shoulder, joint disorder of the knees, asthma, alcohol abuse, and depressed and anxious mood disorder. (Tr. 16.) However, the ALJ decided that none of the spinal impairments met or equaled the severity of listings 1.04(A) and 1.04(C). (Tr. 17.) As explained below, remand is necessary so that the ALJ can reevaluate the evidence regarding the plaintiff's impairments under listing 1.04(A).

When an ALJ finds that a claimant has a medically determinable impairment that is "severe," the ALJ must determine whether the identified "impairment(s) meets or equals a listed impairment in appendix 1." 20 C.F.R. § 404.1520(a)(4)(iii). Each impairment in the appendix "is sufficient, at step three, to create an irrebuttable presumption of disability" under the Social Security regulations. *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). "The regulations also provide for a finding of such a disability *per se* if an individual has an impairment that is 'equal to' a listed impairment." *Id.* (citing 20 C.F.R. 404.1520(d) ("If you have an impairment(s) which . . . is listed in appendix 1 or

---

[7] The plaintiff raised this argument for the first time in his reply brief. The government argues that these arguments are therefore waived. *See Gonzalez v. United States*, 17-CV-1093, 2019 WL 3408886, at *2 n.2 (S.D.N.Y. July 29, 2019) (citing *Farmer v. United States*, 15-CV-6287, 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived . . ."). However, this rule is typically applied where the parties are not filing cross-motions, out of concern that "a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues." *United States v. Martinez*, 475 F. Supp. 2d 154, 166 (D. Conn. 2007) (citation and quotations omitted). The government had the opportunity to respond to these arguments. Therefore, they are not waived.

9

is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.")).

A district court cannot determine whether an ALJ applied the law correctly or based her decision on substantial evidence in the record if the ALJ does not explain why the ALJ reached a particular decision. In those circumstances, the court must remand the case. *See Estrada ex rel. E.E. v. Astrue*, No. 08-CV-3427, 2010 WL 3924686, at *3 (E.D.N.Y. Sept. 29, 2010) (remand is appropriate "[i]n circumstances . . . where the ALJ has stated no findings or conclusions with respect to a claim of disabling impairment, especially one to which the claimant arguably has demonstrated the symptoms described . . ."; *see also Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("Remand is particularly appropriate where . . . we are 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'") (citations omitted); *Wong v. Astrue*, No. 06-CV-2949, 2010 WL 1268059, at *10 (E.D.N.Y. Mar. 31, 2010) (case remanded where ALJ provided insufficient explanation for conclusion that plaintiff did not meet or equal a listing, where evidence suggested plaintiff met listing criteria).

Under listing 1.04(A), a claimant is presumptively disabled if he has "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture[ ], resulting in compromise of a nerve root . . . or spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A). Under listing 1.04(C), a claimant must establish "lumbar spinal stenosis

resulting in pseudoclaudication, established by . . . medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively. . ." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04(C).[8] The ALJ concluded that the plaintiff did not meet either listing because "the objective evidence of record does not demonstrate that the claimant is unable to perform fine or gross movements or is unable to ambulate 'effectively' . . . or that he has exhibited each of the necessary neurological deficits in the upper and lower extremities or the spine." (Tr. 17.)

The record shows, however, that the plaintiff has both a lumbar spine disorder and a cervical spine disorder within the meaning of listing 1.04(a). Imaging studies from 2014 showed abnormal findings in the plaintiff's cervical and lumbar spine consistent with the conditions in listing 1.04(A), including herniated and bulging discs in his lumbar and cervical spine and accompanying stenosis ranging from mild to severe. (Tr. 476-79; 690-98.) Electrophysiological examination also revealed evidence of lumbar and cervical radiculopathy. (Tr. 463.) Dr. Stiler and other medical professionals concluded from these findings, as well as their observations of the plaintiff's physical condition, that the plaintiff had lumbar spine trauma, lumbar radiculopathy, as well as cervicalgia, cervical spine trauma, HNP cervical without myelopathy and radiculopathy in the cervical and lumbar region. (Tr. 396, 440-461, 650-654.) There was also ample evidence in the record that the plaintiff had "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A). Dr. Stiler observed lumbar nerve root compression accompanied by lower back pain and tenderness, as well as cervical radiculitis and root

---

[8] Inability to ambulate effectively is defined as "an extreme limitation of the ability to walk." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B2b.

11

compression with tenderness and spasms. (Tr. 650-654.) The medical record shows that the plaintiff had back pain, tenderness, spasms and weakness, and limitations in range-of-motion, including limited flexion, extension, and bending below normal ranges, as well as evidence of motor loss. (Tr. 396, 440-461, 650-654.) The plaintiff also had a positive result for the straight-leg raising test, as required under listing 1.04(A) to demonstrate involvement of the lower back. (Tr. 559.)

The government cites other medical findings in the record, including reports that the plaintiff regained range of motion and motor strength, or that he tested negative for straight-leg raising in February of 2015 and August of 2016. These inconsistent findings may very well lead the ALJ to conclude that the plaintiff does not meet the criteria for listing 1.04(A). But where there is evidence that the plaintiff's "symptoms appear to match those described in a listing, the ALJ must explain a finding of ineligibility based on the [l]istings." *Critoph v. Berryhill*, No. 16-CV-00417, 2017 WL 4324688, at *3 (W.D.N.Y. Sept. 28, 2017) (quoting *Cardillo v. Colvin*, No. 16-CV-134, 2017 WL 1274181, at *4 (N.D.N.Y. Mar. 24, 2017)). "It is particularly important for an ALJ to specifically address conflicting probative evidence with respect to the step three analysis, because a claimant whose condition meets or equals that of a [l]isting is deemed disabled *per se* and eligible to receive benefits." *Szarowicz v. Astrue*, No. 11-CV-277S, 2012 WL 3095798, at *5 (W.D.N.Y. July 30, 2012). Apart from a conclusory statement that the plaintiff did not meet the criteria, the ALJ did not otherwise analyze whether the plaintiff's impairments met or equaled the relevant listing.

As for listing 1.04(C), the record demonstrates that the plaintiff was diagnosed with spinal stenosis, had difficulty walking and sometimes used a cane to walk. However, as ALJ Ramrup concluded, the record does not support a finding that the plaintiff could not "ambulate

effectively," a requirement for listing 1.04(C). (Tr. 17.) The plaintiff walked without a cane during Dr. Long's consultative examination and testified that he used only one cane to walk (rather than two canes, as required by the listing). (Tr. 480-485.) He also said he could walk two or three blocks without stopping to rest (Tr. 55), sit for one or two hours at a time (Tr. 50) and take public transportation. (Tr. 45-46.) The plaintiff's diagnosis does not appear to include a finding of pseudoclaudication, another necessary element of listing 1.04(C). *Trancynger v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 106, 119 (S.D.N.Y. 2017) (denying remand under listing 1.04(C) where record demonstrated diagnosis of stenosis without findings of pseudoclaudication).[9]

## CONCLUSION

Accordingly, the plaintiff's motion for judgment on the pleadings is granted, the Commissioner's cross-motion is denied, and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

s/Ann M. Donnelly
Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
March 10, 2020

---

[9] Pseudoclaudication is defined as pain and discomfort in the lower back, buttocks, or thighs, which may result from lumbar spinal stenosis. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04C.